UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEREMY DANIEL SCHUH,

       Plaintiff,

                                 CASE NO. 1:09-CV-982

v.

                                 HON. ROBERT J. JONKER

MICHIGAN DEPARTMENT of
CORRECTIONS, *et al.*,

       Defendants.

_____/

## ORDER APPROVING AND ADOPTING
## REPORT AND RECOMMENDATION WITH MODIFICATIONS

The Court has reviewed Magistrate Judge Brenneman's Report and Recommendation (docket

# 105), Defendants' Objections to the Report and Recommendation (docket # 106), and Plaintiff

Schuh's Objections to the Report and Recommendation (docket # 108).  Under the Federal Rules

of Civil Procedure, where, as here, a party has objected to portions of a Report and

Recommendation, "[t]he district judge . . . has a duty to reject the magistrate judge's

recommendation unless, on de novo reconsideration, he or she finds it justified."  12 WRIGHT,

MILLER, & MARCUS, FEDERAL PRACTICE AND PROCEDURE § 3070.2, at 381 (2d ed. 1997).

Specifically, the Rules provide that:

> The district judge to whom the case is assigned shall make a de novo
> determination upon the record, or after additional evidence, of any
> portion of the magistrate judge's disposition to which specific written
> objection has been made in accordance with this rule.  The district
> judge may accept, reject, or modify the recommended decision,
> receive further evidence, or recommit the matter to the magistrate
> judge with instructions.

FED R. CIV. P. 72(b).  De novo review in these circumstances requires at least a review of the evidence before the Magistrate Judge.  *Hill v. Duriron Co.*, 656 F.2d 1208, 1215 (6th Cir. 1981). The Court has reviewed de novo the claims and evidence presented to the Magistrate Judge; the Report and Recommendation itself; and the parties's objections.

The Plaintiff's complaint in the case is lengthy.  It covers a significant period of time and asserts nine separate claims against 28 defendants.  The Court's original screening opinion and order (docket ## 4, 5) leaves eight separate counts against nineteen Defendants.  The chart attached as Exhibit A summarizes the counts and Defendants still at issue.  Some of the counts include multiple embedded theories of relief.  The Magistrate Judge's Report and Recommendation (docket # 105) addresses summary judgment motions filed by defendant Johnson (docket # 55), defendant Martin (docket # 60), defendants Caruso and Burnett (docket # 71) and defendants Baitinger, Hernandez, Beak, Gagne, Smith, Wyma, Tkach, Greenfield, Goodson, Datema, Sisson, Lahr, Wolever, Gorman and Willard (docket # 80).  Plaintiff Schuh, and defendants Johnson, Baitinger, Hernandez, Beak, Gagne, Smith, Wyma, Tkach, Greenfield, Goodson, Datema, Sisson, Lahr, Wolever, Gorman and Willard, have all filed objections (docket ## 106, 108).

Plaintiff's claims arise out of multiple incidents occurring over the course of more than a year.  This order deals with each incident and the claims related to the incident in chronological order, rather than in order of the counts of the complaint.

**Denials of Kosher Diet in December, 2007 and in 2009**
**Count VI Claims – Defendants Burnett, Martin, Wyma, Smith, Caruso**

**A.    Interference with Exercise of Religious Belief:  Burnett, Martin, Wyma and Smith**

On December 6, 2007, Defendant Warden Smith notified Plaintiff that Defendant Special Activities Coordinator Burnett[1] had denied his request for a Kosher diet based on Plaintiff's history with the Kosher menu and Plaintiff's inability to provide sufficient information about Judaism when interviewed about the faith.  MDOC Policy Directive 05.03.150 prohibited Plaintiff from requesting another evaluation for a Kosher diet for a full year from the date of denial.  A year later, Plaintiff reapplied for the Kosher menu.  Defendant Special Activities Coordinator Martin denied the request.  Defendant Martin based his denial partly upon the opinion of Defendant Chaplain Wyma, who interviewed Plaintiff about Judaism in December 2008.  After the interview, Defendant Wyma forwarded Plaintiff's interview responses to Defendant Martin with a suggestion that Plaintiff not be granted the Kosher menu because he lacked a genuine understanding of the Jewish faith and its principles.  In February, 2009 (before a decision regarding Plaintiff's request for a Kosher diet had been reached), Plaintiff wrote Defendant Martin a letter claiming that Defendant Wyma had tested Plaintiff's understanding of Judaism improperly.  Plaintiff claims that Defendant Wyma falsely recorded his responses at the interview.[2]

---

[1]Defendant Burnett retired from his position as Special Activities Coordinator, Correctional Facilities Administration, on December 29, 2007.  Defendant Martin has held the position since April 20, 2008.  (Report and Recommendation, docket # 105, at 16.)

[2]It is undisputed that Plaintiff now receives a Kosher diet.

Plaintiff asserts claims of interference with the exercise of his religious beliefs in violation of the First Amendment and RLUIPA against Defendants Burnett, Martin, and Wyma by twice denying his access to a Kosher diet based on their conclusions that he did not qualify for it under MDOC policy.  The Magistrate Judge recommends summary judgment for Defendants Burnett and Martin on Plaintiff's First Amendment and RLUIPA claims, based upon qualified immunity. Plaintiff has not objected to the Magistrate's conclusion under the First Amendment, and so summary judgment is appropriate as to the First Amendment aspect of the defense motion for Defendants Burnett and Martin.   Plaintiff does  object to the RLUIPA conclusion, however.  The record shows that Defendant Burnett and Martin complied with the applicable MDOC policies regarding the Kosher diet application by denying Plaintiff a Kosher diet only so long as the record they reviewed demonstrated that Plaintiff did not have a sufficient understanding of Judaism to warrant a Kosher diet.  Once Plaintiff made the necessary showing, he received a Kosher diet.  This in no way amounts to the kind of substantial burden of the free exercise of Plaintiff's religion that RLUIPA prohibits.  Nothing in the First Amendment or RLUIPA imposes liability on prison officials for conscientiously applying reasonable policies designed to implement legitimate prison management interests.  That is all the MDOC policy does, and that is all these Defendnats did by following it.[3]  The same analysis applies to Plaintiff's claims against Defendant Warden Smith.  The Magistrate Judge correctly determined that Defendants Burnett, Martin, and Smith are entitled to summary judgment on these claims.

_____

[3]Under RLUIPA, the question is not one of qualified immunity, but rather whether the factual record would permit a reasonable finder of fact to conclude that the neutral implementation of the MDOC policy to deny Plaintiff access to a Kosher diet until he could demonstrate sufficient knowledge of Judaism could amount to a substantial burden on religious free exercise in prison. This Court finds it could not.

The same analysis also applies to the extent Plaintiff makes the same claims against Defendant Wyma.  But there is one aspect of the claim against Defendant Wyma that is unique: namely, Plaintiff's claim that Defendant Wyma violated the First Amendment and RLUIPA by falsely recording Plaintiff's responses during the interview.  On this narrow claim the Magistrate Judge recommended denying summary judgment.  Defendant Wyma argues that summary judgment is appropriate on all claims relating to the alleged falsification of the results of the interview with Plaintiff because (1) Plaintiff's only evidence to support the claim is his own self-serving affidavit, and (2) it is not clearly established that an official may be individually liable for money damages under RLUIPA, thus entitling Defendant Wyma to qualified immunity.  The second objection conflates the concepts of liability and remedy, and is not a basis for summary judgment.  The Court agrees, however, that Plaintiff has not adduced sufficient evidence to demonstrate a genuine issue of material fact on the issue of whether Defendant Wyma falsified the results of Plaintiff's interview. Indeed, Plaintiff's affidavit suggests, at most, that Defendant Wyma was incomplete or unduly cryptic in recording some of his responses.  Nothing in the affidavit suggests any kind of intentional deception on Defendant Wyma's part, and nothing in RLUIPA or the First Amendment requires a verbatim transcription of a prisoner's oral responses to questions.  The decision of the prison officials as to whether the prisoner has demonstrated an appropriate religious basis for a Kosher diet is a judgment call.  Here Defendants delayed Plaintiff's Kosher diet for a little while until they were satisfied he demonstrated a genuine and sincere understanding of the faith.  Once he did, they provided the Kosher diet.  The law does not required more on this record.  Summary judgment for Defendant Wyma is also appropriate on the Count VI claims.

**B.     Constitutionality of MDOC Policy Directive:   Caruso**

Plaintiff challenges in Count VI the constitutionality of the MDOC's Kosher menu accommodation as set forth in MDOC Policy Directive 05.03.150 and Operating Procedure 05.03.150A.  He asserts this claim against Defendant Patricia Caruso, the Director of the MDOC. The Magistrate Judge found that Policy Directive 05.03.150 and Operating Procedure 05.03.150A do not violate the Constitution; therefore, he recommends summary judgment for Defendant Caruso on Plaintiff's constitutional claim.  Plaintiff now objects to a grant of summary judgment in favor of Defendant Caruso, asserting that he is challenging the Policy Directive and Operating Procedure under RLUIPA.  He does not raise an objection to the Magistrate Judge's determination that the Policy Directive and Operating Procedure are constitutional.  To the extent Plaintiff asserts that the MDOC Policy Directive 05.03.150 and Operating Procedure 05.03.150A violate RLUIPA, Defendant Caruso is also entitled to summary judgment.  Nothing in the application of the policy to Plaintiff on this record amounts to a substantial burden on Plaintiff's exercise of religion in violation of RLUIPA.  The policy simply allows MDOC to manage in a reasonable way requirements for religious dietary accommodation.  When Plaintiff met the requirements, he received the Kosher diet.

For these reasons, the defense motions for summary judgment on Count VI are granted and Count VI is dismissed with prejudice.

### Denial of Access to Yard Exercise, Spring 2008
### Count II Claim – Defendant Smith

Plaintiff alleges that from approximately April or May, 2008, he was on loss-of-privilege status and not allowed to go to the yard for exercise.  He filed grievances regarding the lack of yard exercise.  Defendant Warden Smith denied the grievances at Step II of the grievance appeal process.

Plaintiff does not allege that Defendant Smith was personally involved in the decision to limit his yard exercise other than to deny his grievance at Step II.

Plaintiff asserts a constitutional claim based on this lack of access to exercise. The Magistrate Judge recommends granting summary judgment to Defendant Smith. The Magistrate Judge points out correctly that a prison official whose only role involved the denial of an administrative grievance cannot be liable under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Plaintiff does not object to the Magistrate Judge's recommendation as to Defendant Smith. However, Plaintiff objects that the Magistrate Judge did not address Plaintiff's related claim against Defendant MDOC Director Caruso concerning the constitutionality of MDOC Policy P.D.03.03.105. Even assuming Plaintiff has properly pleaded and exhausted such a claim – which is not at all clear – Defendant Caruso would still be entitled to summary judgment on this record. There is no clearly established constitutional right to one hour of out-of-cell exercise for prisoners who violate prison rules, or refuse to accept exercise when offered. The policy on its face is not a violation of clearly established constitutional rights.

### Denial of Acid-Reflux Diet in May, 2008
### Count VII – Defendant Willard

Plaintiff alleges that in November, 2007, a physician recommended that he consult with a dietitian, and that between that date and January 8, 2008, his requests to see a dietitian were ignored. After filing grievances, Plaintiff met with Defendant Willard, a dietitian, on May 13, 2008. According to Plaintiff, a few days later, Defendant Willard sent him a memorandum stating that she needed to review his file and refusing to place him on an acid-reflux diet until after a second meeting. Defendant Willard did not meet with Plaintiff again. According to Defendant Willard, Plaintiff did meet with another medical provider on July 14, 2008, at which time he requested an

acid-reflux diet.  Defendant Willard states that the medical provider directed Plaintiff to self-select from the regular menu.  (Report and Recommendation, docket # 105, at 32-33.)

Plaintiff claims that Defendant Willard denied him constitutionally adequate medical care; that is, that Defendant Willard was deliberately indifferent to his serious medical needs.  The Magistrate Judge found that material questions of fact existed regarding this claim, and he therefore recommended that Defendant Willard's motion for summary judgment be denied.  Defendant Willard objects, noting that she did consult with and advise Plaintiff and that Plaintiff took medication for his gastro-esophageal reflux disease.

Defendant Willard is entitled to summary judgment.  An Eighth Amendment claim of deliberate indifference to serious medical needs consists of both an objective and subjective component.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  A court considering a prisoner's Eighth Amendment claim must ask both if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and if the official acted with a sufficiently culpable state of mind. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992).  The objective component requires the infliction of serious pain or failure to treat a serious medical condition.  *Id.* at 8-9.  To establish the subjective component, the plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.   Plaintiff in essence alleges that Defendant Willard delayed indefinitely in conducting a second appointment with him.  "[A]n inmate who complains that a delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Napier v. Madison*

*County, Kentucky*, 238 F.3d 739, 742 (6th Cir. 2001). Plaintiff has not shown a detrimental effect caused by the delay he alleges. The record does not support a claim that Defendant Willard knew of and disregarded an "excessive risk." *See Farmer*, 511 U.S. at 837. At most, Plaintiff has alleged negligence, not deliberate indifference, against Defendant Willard. Negligence in diagnosing or treating a medical condition simply does not create an Eighth Amendment violation. *Id.* at 835. Summary judgment in favor of Defendant Willard is appropriate on Count VII.

### Unlawful Use of Force; Retaliation; and Harassment in July, 2008
### Count VIII Claims – Defendants Datema, Sisson, Lahr,
### Wolever, Gorman, Greenfield, Goodson

According to Plaintiff, on July 11, 2008, he inflicted injury upon himself by swallowing 50 Excedrin migraine tablets while making direct eye contact with Defendant Datema. Defendant Datema refused to contact medical staff. Not long afterward, alleges Plaintiff, Defendants Datema, Sisson, Lahr, and Wolever escorted Plaintiff from his cell to the dayroom and into a holding cell as instructed by Defendant Gorman. Plaintiff informed these defendants that he needed medical attention because he had taken an overdose of pills. According to Plaintiff, Defendants Wolever, Lahr, Datema, Sisson, and Gorman proceeded to beat him, and one or more of these defendants sexually assaulted him. Plaintiff received medical treatment and was placed on suicide watch.

Plaintiff alleges that over the next few days, between July 16 and July 20, Defendants Wolever, Datema, Sisson, and Gorman each visited Plaintiff, taunted him about the assault, and threatened further harm to him, including but not limited to sexual assaults. Defendant Gorman allegedly also denied Plaintiff a food tray and threatened to kill Plaintiff and his family if Plaintiff continued to pursue his investigation of the July 11, 2008 incident. According to Plaintiff,

Defendants Gorman and Sisson took these actions against him in retaliation for unspecified past grievances he had filed against them.

## A.        Unlawful Use of Force

Plaintiff asserts a claim of unlawful use of force against Defendants Lahr, Datema, Sisson, Gorman, and Wolever.  The Magistrate Judge recommends denying summary judgment on that claim, finding genuine issues of material fact preclude judgment as a matter of law.  Defendants object that to the extent this claim is based on a state law assault and battery theory, the Court should decline to exercise supplemental jurisdiction.  (Defs. Obj., docket # 106, at 5-6.) The defendants also object that Plaintiff's version of the facts is so blatantly contradicted by the medical records as to entitle them to summary judgment.  The Magistrate Judge properly found that the defendants are not entitled to summary judgment on the unlawful use of force claims.  Plaintiff and Defendants have filed affidavits presenting conflicting accounts, and Plaintiff's account could rise to the level of unconstitutional excessive force.  Moreover, the medical records indicate a variety of injuries, some of which were not obviously self-inflicted.[4]   A genuine issue of material fact exists on the unconstitutional excessive force claim.  To the extent the claims Plaintiff attempts to assert are simply state law claims for assault and battery or other intentional tort, the Court declines to exercise supplemental jurisdiction.

---

[4]Plaintiff also asserted claims of harassment by Defendants Lahr, Sisson, Gorman, and Wolever arising out of this incident.  The Magistrate Judge correctly found that Plaintiff's allegations of harassment and verbal abuse do not state a claim for relief under § 1983.  Plaintiff has not objected.  Similarly, Plaintiff also alleged that Defendant Greenfield exceeded his authority by rejecting one or more grievances related to these incidents.  The Magistrate Judge properly determined that Defendant Greenfield is entitled to summary judgment, and Plaintiff has not objected.

**B.    Retaliation: Defendants Gorman and Sisson Only**

Plaintiff asserts a claim of First Amendment retaliation against Defendants Gorman and Sisson, contending that these two defendants assaulted him because he had filed unspecified grievances against them.  The Magistrate Judge recommends granting summary judgment for defendants Gorman and Sisson on Mr. Schuh's claims that they retaliated against him for filing grievances, reasoning that Plaintiff presented only conclusory allegations of retaliation against these two defendants and failed to identify any particular protected conduct beyond filing grievances.  Mr. Schuh objects, asserting that these defendants wrote a false misconduct charge against him because he filed grievances against them related to the alleged assault.  (Pl.'s Obj., docket # 108, at 9.)  This is another conclusory allegation unsupported by the record.  The Court agrees with the Magistrate Judge that Mr. Schuh has not come forward with sufficient evidence of retaliation to proceed with the claim.

**C.    Failure to Investigate: Defendant Goodson**

Plaintiff asserts a claim that Defendant Goodson investigated the alleged retaliatory assault in an inappropriate manner that violated the Constitution.  The Magistrate Judge recommends granting summary judgment to Defendant Goodson as to this claim.  The Magistrate Judge points out correctly that Mr. Schuh cannot prevail  on this claim "because prison officials do not incur § 1983 liability for failing to properly investigate a prisoner grievance." (*Id.*)  Mr. Schuh's objects, speculating that Defendant Goodson conspired with the other defendants.  This objection, which finds no support in the record, does not change the fundamental analysis.  Defendant Goodson is entitled to summary judgment.

11

Based on these rulings, the only Count VIII claims that survive summary judgment are the unconstitutional excessive force claims against Defendants Datema, Gorman, Lahr, Sisson, and Wolever.

### Unlawful Use of Force on July 13, 2008
### Count IX Claims – Defendant Sisson

Plaintiff alleges that Defendant Sisson and non-party RUO Mawer assaulted him while he was sleeping in his cell on July 13, 2008.  According to Plaintiff, Defendant Sisson and non-party RUO Mawer entered his cell, held Plaintiff down by his feet and roughly restrained him, then dragged him into the dayroom cell for an interview with a psychologist.  The psychologist who interviewed Plaintiff, non-party Heather L. Douglass, M.A., offers a different account in her affidavit.  She had an appointment to see Plaintiff based upon his claims that he had taken 150 pills on July 11, 2008, and his injuries due to head banging the same day.  She was present when Defendant Sisson and Officer Mawer approached Plaintiff to take him to the dayroom, and the officers did not assault Plaintiff.  Contemporaneous medical records support Ms. Douglas's account.  Her notes reflect that "[Plaintiff] is lying on floor on his mattress when we approached the inmate.  He refused to move and custody staff removed him from this cell in restraints with little resistance by the inmate.  However he then reports that he was assaulted by staff during our interview."  (MDOC Progress Notes, docket # 92, at 5-6.)  Plaintiff reported hearing voices indicating that he should kill himself, stated that he wanted to kill himself, and spoke of his believe that "all MDOC staff are trying to kill him."  (*Id.* at 6.)  Plaintiff was diagnosed as a moderate suicide risk.  (*Id.* at 8.)  His diagnoses also included malingering, polysubstance dependence, borderline personality disorder, and antisocial personality disorder.  (*Id.* at 5.)

Plaintiff asserts claims of assault and unconstitutional excessive force against Defendant Sisson based upon this incident.  The Magistrate Judge recommends granting summary judgment in favor of Defendant Sisson as to this claim.  The Magistrate Judge explains, accurately, that Mr. Schuh's "version of the facts as set forth in his verified complaint is blatantly contradicted by the medical records prepared by the non-party psychologist who witnessed the event and later interviewed plaintiff."  Plaintiff objects, stating that the Magistrate Judge is mistaken and that discovery would reveal more facts supporting his claim.  This objection is not persuasive, particularly given the force of the non-party psychologist's report.  It is not a videotape, s*ee Scott v. Harris*, 550 U.S. 372, 378-380 (2007), but the contemporaneous treatment notes of a non-party treating psychologist who serves the same kind of reality check, particularly where Plaintiff himself was obviously suffering under mental health challenges at the time.  Defendant Sisson is entitled to summary judgment on the claims in Count IX.

## Unlawful Use of Force and Failure to Investigate, October, 2008
## Count IV Claims – Defendants Tkach, Greenfield, Goodson

Plaintiff alleges that on October 7, 2008, Defendants Tkach and Greenfield assaulted him in retaliation for filing unspecified grievances.  According to Plaintiff, while Defendants Tkach and Greenfield were escorting him to his cell, they made sexually explicit comments or threats directed at him.  Plaintiff states that Defendant Tkach threw him to the ground, jumped on his back, shackled him tightly, threw him onto the bed in his cell, grabbed and squeezed his groin and testicles, and punched him in the eye.  Defendant Tkach wrote a major misconduct for threatening behavior on the part of Plaintiff as a result of this incident.  Plaintiff does not dispute that he was found guilty of the misconduct for threatening behavior.  Plaintiff alleges that the investigator, Defendant Goodson, failed to investigate the assault properly and attempted to conceal the assault.

### A.      Retaliation: Defendants Tkach and Greenfield

Plaintiff asserts a First Amendment retaliation claim against Defendants Tkach and Greenfield arising out of this incident.  The Magistrate Judge recommends summary judgment for defendants Tkach and Greenfield as to the retaliation claim, because Mr. Schuh presented only conclusory allegations in support of his retaliation claim and failed to identify any particular protected conduct which gave rise to the alleged retaliation other than filing grievances.  Plaintiff objects that he has alleged specifically that the alleged assault was retaliation for his filing grievances against Defendant Tkach's friend, Defendant Gorman.  The problem for Plaintiff is that he has not been able to identify even a single grievance against these Defendants that could even plausibly serve as a basis for retaliation.  The Magistrate Judge correctly found nothing but conclusory allegations on this claim, and correctly recommended summary judgment for Defendants.

### B.      Unlawful Use of Force

Plaintiff also asserts an unlawful use of force claim against Defendants Tkach and Greenfield arising out of the incident.  The Magistrate Judge recommends denying summary judgment as to this claim.  Defendants object that to the extent the Court construes the assault claim as a state law claim and not an excessive force claim under the Eighth Amendment, it should decline to exercise supplemental jurisdiction over the assault claim and dismiss the claim without prejudice.  (Defs.' Obj., docket # 106, at 2-3.)  The Court does decline to exercise supplemental jurisdiction over any state law claims, but Plaintiff's version of the incident could rise to the level of unconstitutional excessive force, and so such a claim must survive summary judgment.

### C.      Failure to Investigate: Defendant Goodson

Plaintiff asserts a claim against Defendant Goodson for failure to investigate the assault appropriately.  The Magistrate Judge recommends granting summary judgment to defendant Goodson on this claim, noting correctly that the claim fails because prison officials do not incur § 1983 liability for failing to properly investigate a prisoner grievance.  *See Carlton v. Jondreau*, 76 F. Appx. 642, 644 (6th Cir. 2003).  Plaintiff objects, speculating that Defendant Goodson conspired with the other defendants.  This objection is not persuasive and does not change the analysis. Summary judgment for Defendant Goodson is appropriate.

Based on these rulings, the only Count IV claim that survives summary judgment is the one for unconstitutional excessive force against Defendants Tkach and Greenfield.

### Self-injury on December 15, 2008
### Count I Claims – Defendants Baitinger, Hernandez, Beak, Gagne, Johnson

Plaintiff alleges that on December 15, 2008, while making eye contact with Defendants Baitinger and Hernandez, he swallowed seventy or eighty Excedrin Migraine tablets.  According to Plaintiff, these defendants initiated no medical response, but appeared to be leaving the cell. Plaintiff then made it appear that he was hanging himself with a sheet, to gain medical attention. Plaintiff was taken to the unit dayroom, where he informed Defendants Beak, Gagne, and Baitinger that he had taken a toxic quantity of Excedrin and requested medical attention.  According to Plaintiff, no one sought medical assistance for him.

At a later point that day, Defendant Johnson, a nurse, came to the dayroom to give Plaintiff his regular medications.  According to Plaintiff, he told Defendant Johnson that he had taken an overdose of Excedrin and had stomach pains.  Plaintiff alleges that Defendant Johnson told him that she had not been informed of any overdose, that he looked fine, and that she did not care if he died. Plaintiff spent the night in an observation cell, where, he alleges, he received no treatment and

15

vomited blood, had a migraine headache, was unable to walk properly, and had muscle spasms. At some point during the night, the third shift officer contacted medical staff. Medical staff saw Plaintiff the next day, by which time he had vomited the toxins out of his system.

Plaintiff asserts a claim of deliberate indifference to his serious medical needs in violation of the Eighth Amendment against Defendants Baitinger, Hernandez, Beak, Gagne and Johnson. The Magistrate Judge recommends denying summary judgment to defendants Baitinger, Hernandez, Leak and Gagne because there exists a question of material fact as to whether these defendants knew that Plaintiff had taken an overdose of medication and failed to provide him medical care nonetheless; and to Defendant Johnson because there exists a question of material fact as to Mr. Schuh's allegation that Nurse Johnson failed to treat him for a drug overdose. Defendants object that they are entitled to summary judgment, because Mr. Schuh did ultimately receive treatment, and they assert, Mr. Schuh has not established that the delay in treatment caused a sufficiently detrimental effect to rise to the level of a constitutional violation. They characterize the incident as, at most, a delay in treatment.

The Court agrees that the incident is properly characterized as, at most, a delay in treatment. "An inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in m edical treatment to succeed." *Napier v. Madison County, Kentucky*, 238 F.3d 739, 742 (6th Cir. 2001) (quotations omitted). The record does not contain evidence of a detrimental effect that would rise to the level of a constitutional violation. An episode of vomiting and spasms that passes and that eventually does receive medical review does not amount to the kind of serious harm that offends the

Constitution.  Defendants are entitled to summary judgment on Plaintiff's deliberate indifference claim arising out of this incident.

This is a somewhat unusual claim that warrants brief additional discussion.  One of the added problems in responding to Plaintiff's allegations on this claim is that even Plaintiff's account of what happened discloses his deliberately manipulative intentions.  Plaintiff was, by his own account, effectively baiting the custodial staff by taking actions, that made him appear to be acting suicidal, when he actually was not.  The Court does not believe anything in the Eighth Amendment requires custodial staff to respond <u>instantly</u> to a deliberately manipulative gesture by a prisoner, at least when the gesture does not actually put the prisoner in imminent peril.  At most, Plaintiff's allegations here amount to a claim that custodial staff made a judgment to let nature take its unpleasant, but ultimately harmless, course by having Plaintiff vomit the non-life threatening pills he took, rather than rush him someplace for an unnecessary stomach pump.

### Constitutionality of MDOC Policy Directive 04.05.120
### Count III – Defendant Caruso

Plaintiff challenges the constitutionality of MDOC Policy Directive 04.05.120, concerning telephone use by prisoners in administrative segregation.  (*Id.* at 9-10.)  The Magistrate Judge recommends granting summary judgment to Defendant Caruso on this claim.  The Magistrate Judge reasons that the regulation limiting telephone access does not impinge on a constitutional right, citing such cases as *Washington v. Reno*, 35 F.3d 1093, 1100 (6th Cir. 1994); *Brown v. Long*, No. 96-5567, 1997 WL 63136 (6th Cir. Feb. 12, 1997); *Dede v. Baker*, No. 93-2318, 1994 WL 198719 (6th Cir. May 18, 1994); and *Aswegan v. Henry*, 981 F.2d 313, 314 (8th Cir. 1992).  (*Id.* at 10.)  Mr. Schuh now objects that the policy, as applied to him, was too restrictive, and that he was not able to make any phone calls during an eleven-month period he spent in segregation.  (Pl.'s Obj., docket # 108,

17

at 6.)  Mr. Schuh does not dispute that he had other means of communicating with his family and other outside parties.  The objection does not change the fundamental summary judgment analysis regarding the constitutionality of the policy.  Defendant Caruso is entitled to summary judgment on this claim.

### Conclusion

This resolves the majority of the claims in the case.  The only claims remaining in the case are the unconstitutional excessive force claims against Defendants Datema, Gorman, Lahr, Sisson, and Wolever; and the unconstitutional excessive force claims against Tkach and Greenfield.

**ACCORDINGLY, IT IS ORDERED** that the Report and Recommendation of the Magistrate Judge (docket # 105), as modified by this Order, is approved and adopted as the opinion of the Court.

**IT IS FURTHER ORDERED** that defendant Johnson's Motion for Summary Judgment is **GRANTED** as to Count I.  Defendant Johnson is **TERMINATED** from this action.

**IT IS FURTHER ORDERED** that Defendant Baitinger, Hernandez, Beak and Gagne's Motion for Summary Judgment (docket # 80) is **GRANTED** as to Count I.  Defendant Baitinger, Hernandez, Beak and Gagne are **TERMINATED** from this action.

Defendant Smith's Motion for Summary Judgment (docket # 80) is **GRANTED** as to Counts II and VI, and Defendant Smith is **TERMINATED** from this action;

Defendant Caruso's Motion for Summary Judgment (docket # 71) is **GRANTED** as to Counts III and VI, and Defendant Caruso is **TERMINATED** from this action;

Defendant Tkach's Motion for Summary Judgment (docket # 80) is **GRANTED** as to the retaliation claim in Count IV and **DENIED** as to the unconstitutional excessive force claim in Count IV.

Defendant Greenfield's Motion for Summary Judgment (docket # 80) is **GRANTED** as to the retaliation claim in Count IV, **DENIED** as to the unconstitutional excessive force claim in Count IV, and **GRANTED** as to Count VIII.

Defendant Goodson's Motion for Summary Judgment is **GRANTED** as to Counts IV and VIII, and Defendant Goodson is **TERMINATED** from this action;

Defendant Burnett's Motion for Summary Judgment (docket # 80) is **GRANTED** as to Count VI, and Defendant Burnett is **TERMINATED** from this action;

Defendant Martin's Motion for Summary Judgment (docket # 60) is **GRANTED** as to Count VI, and Defendant Martin is **TERMINATED** from this action;

Defendant Wyma's Motion for Summary Judgment (docket # 80) is **GRANTED** as to Count VI, and Defendant Wyma is **TERMINATED** from this action;

Defendant Willard's Motion for Summary Judgment (docket #  80) is **GRANTED** as to Count VII, and Defendant Willard is **TERMINATED** from this action;

Defendant Lahr, Datema and Wolever's Motion for Summary Judgment (docket # 80) is **GRANTED** as to the harassment claims in Count VIII and **DENIED** as to the unconstitutional excessive force claims in Count VIII.

Defendant Gorman's Motion for Summary Judgment (docket # 80) is **GRANTED** as to the harassment, retaliation and denial of meal tray claims in Count VIII and **DENIED** as to the unconstitutional excessive force claims in Count VIII.

Defendant Sisson's Motion for Summary Judgment (docket # 80) is **GRANTED** as to the harassment and retaliation claims in Count VIII, **DENIED** as to the unconstitutional excessive force claims in Count VIII, and **GRANTED** as to Count IX.

To the extent the claims Plaintiff attempts to assert against Defendants Tkach, Greenfield, Lahr, Datema, Wolever, and Gorman are state law claims for assault and battery or other intentional tort, the Court declines to exercise supplemental jurisdiction.

To the extent the claims Plaintiff attempts to assert against Defendant Sisson in Count VIII are state law claims for assault and battery or other intentional tort, the Court declines to exercise supplemental jurisdiction.

Plaintiff Schuh's claim for injunctive relief in the form of a Kosher Menu Accommodation in Count VI is **DISMISSED** as moot.


/s/Robert J. Jonker                        
ROBERT J. JONKER
UNITED STATES DISTRICT JUDGE

Dated:  September 30, 2011